COURT OF APPEALS
DECISION
DATED AND FILED

June 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1424**

STATE OF WISCONSIN

Cir. Ct. No. **2016CV5469**

IN COURT OF APPEALS
DISTRICT I

MILWAUKEE BLOCK 10 PROPERTIES, LLC AND MILWAUKEE RIVER HOTEL, LLC,

      PLAINTIFFS-RESPONDENTS,

   V.

CITY OF MILWAUKEE,

      DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: WILLIAM S. POCAN, Judge. *Reversed and cause remanded with directions*.

Before Brash, P.J., Blanchard and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The City of Milwaukee appeals an order of the trial court regarding the claims of excessive property tax assessments brought by Milwaukee Block 10 Properties, LLC and Milwaukee River Hotel, LLC (collectively "Block 10") for its property, the Aloft Hotel. Block 10 argues that the 2016 tax assessments for the Aloft was excessive because it improperly included parking income generated from parking guests' vehicles in a parking ramp that is off-site and owned by a third party.

¶2 The trial court found that the 2016 assessment should not have included the parking income because that business value would not be transferred upon a sale of the Aloft because the hotel does not own the ramp. The court therefore ordered reassessment for 2016, which resulted in reimbursement to Block 10 of more than $20,000.

¶3 We disagree. The relevant issue for consideration is whether the parking income would continue upon a theoretical sale of the Aloft, and the ownership of the parking ramp is not a pertinent factor in this analysis. We therefore reverse and remand this matter for the entry of a judgment in favor of the City, and the dismissal of Block 10's complaint.

## BACKGROUND

¶4 The Aloft is located on Old World Third Street in the City of Milwaukee. For 2015, the City assessed the Aloft at a value of $18,543,000.00; Block 10 appealed. Upon review by the City, the assessment was slightly reduced to $18,491,300.00. The resulting property tax was $542,849.10, which was timely paid by Block 10. However, Block 10 filed a Claim of Excessive Assessment with the City, asserting that the assessment for the Aloft should be no higher than

$10,452,856.00. It therefore sought a refund for the alleged excessive tax of almost $236,000.00, plus interest. The City disallowed the claim on April 19, 2016.

¶5      The 2016 assessment for the Aloft was set at $18,491,300.00. Block 10 again appealed. This time, after review by the City, the assessment was increased to $20,305,000.00. The change in assessment was attributed to parking income generated through a contract that the Aloft has with a parking ramp owned by a third party, which provides valet parking for Aloft guests. This parking income to the Aloft was not included in the 2015 assessment. According to the Property Assessment Report for the Aloft prepared by the Assessor's Office, the failure to include the parking income was an oversight that was corrected in 2016.

¶6      The 2016 assessment resulted in a tax of $582,836.74 on the property, which was timely paid by Block 10. Block 10 again filed a Claim of Excessive Assessment, seeking a refund of almost $238,000.00, plus interest. The claim was again disallowed by the City on March 1, 2017.

¶7      Block 10 subsequently filed the underlying action, challenging both assessments pursuant to WIS. STAT. § 74.37(3)(d) (2017-18).[1]  A court trial was conducted in August 2018, where evidence was presented regarding the fair market value of the Aloft. This included testimony from experts for both parties:  the City's assessor, Timothy Krystowiak; and Block 10's appraiser, John VanSanten.

¶8      In a written decision filed in December 2018, the trial court upheld the 2015 assessment but ordered the City to reassess the Aloft for 2016. The court

---

[1] The complaint regarding the 2015 assessment was filed on July 19, 2016. It was subsequently amended on June 19, 2017, to include the 2016 assessment.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

3

noted that the two experts both used the income approach to determine the value of the Aloft, although their methods differed. This led to disagreements on several calculations, including "how to treat parking income derived from a separate tax parcel."

¶9      The trial court found that Block 10 had demonstrated that the parking income should not be included in the real estate valuation. The court observed that such a business value should be included in a valuation only when it is "inextricably intertwined" with a business. It found that was not the case here, since this business value—the parking income—would not be transferred with the Aloft if it was sold, because a buyer of the Aloft would not be purchasing the parking ramp.

¶10      At trial, the City had provided a calculation of the assessment for the Aloft less the net parking income, which the trial court found to be credible. This calculation resulted in no reduction for the 2015 assessment, because that assessment had not included parking income. However, because the court was not able "to determine the amount of unlawful taxes with reasonable certainty" for 2016, the court ordered that the Aloft be reassessed for 2016.

¶11      After reassessing the Aloft for 2016, the City Assessor's Office set its assessment at $19,586,700. This assessment, which was adopted by the trial court, resulted in a refund to Block 10 of $20,618.15, plus statutory interest, for the excessive taxes paid. This appeal follows.

## DISCUSSION

¶12      Claims for excessive tax assessments are brought under WIS. STAT. § 74.37(3)(d). In such cases, we review the record from the trial court, not the record from the City's review of the claim. *See Walgreen Co. v. City of Madison*, 2008

WI 80, ¶16, 311 Wis. 2d 158, 752 N.W.2d 687. We defer to the trial court's findings of facts, but the application of the law to those facts is a question of law that we review *de novo*. ***Id.***, ¶17.

¶13 Property assessments prepared by the City are presumed to be correct. *See* WIS. STAT. § 70.49(2). This presumption is overcome if the party challenging the assessment either (1) presents significant contrary evidence; or (2) demonstrates that the City did not apply the principles of the Property Assessment Case Manual. ***Allright Props., Inc. v. City of Milwaukee***, 2009 WI App 46, ¶12, 317 Wis. 2d 228, 767 N.W.2d 567.

¶14 The issue of whether the Aloft's parking income should be included in its assessment arose due to the use of the income approach for the valuation. According to the Manual, the income approach may be used in the valuation of a property when there are no comparable sales available. ***Id.***, ¶30. Furthermore, the Manual states that the income approach "may be the most reliable method in estimating the value of commercial property because it represents the way investors think when they buy and sell income property in the market." ***Id.*** (citing 1 *Property Assessment Manual* at 9-11 (emphasis in ***Allright Properties*** omitted). For this reason, it is an appropriate method of establishing value for "a number of different properties, including … hotels[.]" ***Waste Mgmt. of Wis., Inc. v. Kenosha Cty. Bd. of Review***, 184 Wis. 2d 541, 561, 516 N.W.2d 695 (1994).

¶15 The City argues that the Aloft's parking income should be included in the assessment because it is "inextricably intertwined" with the Aloft's business value. "The concept of inextricable intertwinement allows business value to be included within the assessment of real property where the income-generating capability can be transferred with the real estate." ***Adams Outdoor Advert., Ltd. v.***

*City of Madison*, 2006 WI 104, ¶79, 294 Wis. 2d 441, 717 N.W.2d 803. Whether certain income may be included in the property assessment of a business "hinges on whether the value appertains to the property." *ABKA Ltd. P'ship v. Board of Review of Fontana-On-Geneva Lake*, 231 Wis. 2d 328, 336, 603 N.W.2d 217 (1999). A "value that appertains to property is one that is transferable with the property," as opposed to value that "'is, in effect, independent of the property so that the value either stays with the seller or dissipates upon sale.'" *Id.* at 336-37 (citation omitted).

¶16     The trial court, while finding that the City had complied with the Manual, held that Block 10 had presented significant contrary evidence, namely, significant evidence that the parking income should not be included in the Aloft's assessment. The court's decision was based on the fact that the Aloft does not own the parking ramp it utilizes to generate this income. Indeed, in many of the cases addressing this issue, the property owners were challenging assessments that included income generated based solely on use of the taxed property at issue. *See, e.g.*, *Allright Props., Inc.*, 317 Wis. 2d 228, ¶16; *Waste Mgmt. of Wis.*, 184 Wis. 2d at 545.

¶17     However, property ownership is not the driving factor of the analysis for including business income in an assessment. For example, in *ABKA*, the property owners of the Abbey on Geneva Lake Resort asserted that the assessment by the Village of Fontana-on-Geneva Lake improperly included income from its management of separately owned off-site condominiums. *ABKA Ltd. P'ship*, 231 Wis. 2d at 331. Our supreme court disagreed, however, finding that the management income was inextricably intertwined with the Abbey. *Id.* Although the Abbey did not own the condominiums, they had been developed by the Abbey's owners "with the intention of providing a steady and available source of customers

for the Abbey." *Id.* at 338. Therefore, the *ABKA* court found that "the listing of the management income was relevant because it indicated that the value of the Abbey included the management income and suggested that potential purchasers would be purchasing the ability to earn the income as well." *Id.* at 340. As a result, a new owner with "[a] competent level of management" could be "expected to reproduce the predicted income stream from the condominiums." *Id.* at 342. In other words, ownership of the condominiums was not essential for the income to properly be included in the assessment of the Abbey; rather, the likelihood that the income from "competent" management of the condominiums would continue upon the sale of the Abbey was the salient point.

¶18 Block 10 relies on the fact that a transfer in ownership of the Aloft would not include contractual rights with the owner of the parking ramp currently used by the Aloft. However, under the reasoning of the *ABKA* court, the issue here is not whether Block 10 owns the parking ramp used by guests of the Aloft, but instead whether the income derived from guests of the Aloft who require parking services would continue under "competent" management of the hotel property upon its transfer.

¶19 Under this analysis, it is not relevant that contract rights with the parking ramp's owner would not be included in a sale to a new owner of the Aloft property. What *is* relevant is whether a new owner of the hotel property would have the "ability to exploit the income-producing capacity that inherently exists" at a hotel that attracts guests who require parking services. *See id.* at 341-42. Put another way, the opportunity for the hotel property, once sold, to generate parking income is not derived from the particular parking ramp that has the current contract with the Aloft.

¶20    In our review of the record, Block 10 did not present significant contrary evidence that parking income would not continue if the Aloft was sold. This would require showing that the parking income would "dissipate[] upon sale"—essentially, demonstrating that guests requiring parking services would cease to stay at the Aloft upon a transfer of ownership, which Block 10 failed to do. *See id.* at 337. Therefore, the Aloft's parking income is inextricably intertwined with its business value. *See **Adams Outdoor Advert., Ltd.***, 294 Wis. 2d 441, ¶79.

¶21    In basing its decision primarily on the ownership of the parking ramp, the trial court did not apply the proper legal standard to the facts of this case. Furthermore, when the proper legal standard is applied, as explained above, Block 10 did not overcome the presumption that the City's assessment of the Aloft was correct. *See **Allright Props., Inc.***, 317 Wis. 2d 228, ¶12. Accordingly, we reverse and remand this matter for entry of a judgment in favor of the City and dismissal of Block 10's claims.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.